IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AFFINITY PRODUCTION CO., LLC, a Nebraska Limited Liability Co., | CASE NO. 8:08CV449 |
| Plaintiff and Counterdefendant, | |
| v. | |
| CSS FARMS, INC., a South Dakota Corporation doing business in Nebraska, | MEMORANDUM AND ORDER |
| Defendant and Counterclaimant, | |
| v. | |
| DANIEL KOCH, an Individual, | |
| Counterdefendant. | |

This matter is before the Court on the Motion for Summary Judgment, or in the alternative, Partial Summary Judgment (Filing No. 93), submitted by Defendant CSS Farms, Inc. ("CSS Farms"). CSS Farms seeks judgment in its favor on the merits of the breach of contract and tortious interference with business expectancy claims presented by Plaintiff Affinity Production Co., LLC ("Affinity"). In the alternative, CSS Farms seeks partial summary judgment on the issue of damages, precluding Affinity from claiming damages based on its alleged lost profits and failure to sell its business as a going concern. For the reasons discussed below, the Motion will be granted on the merits, and Affinity's claims will be dismissed, with prejudice.

## PROCEDURAL BACKGROUND

Affinity, a Nebraska Limited Liability Company, brought this action against CSS Farms, a South Dakota corporation, in the District Court of Douglas County, Nebraska, on

September 3, 2008. Affinity alleged that CSS Farms committed an anticipatory breach of its contract to deliver potatoes to Affinity and intentionally interfered with Affinity's valid business expectancy, specifically its expectation that it would sell its potato chip manufacturing business to a third party. (Complaint, Filing No. 1-2). CSS Farms removed the action to this Court, invoking the Court's diversity jurisdiction, and brought counterclaims against Affinity and Daniel Koch, a principal and member of Affinity. (Notice of Removal, Filing No.1; Answer to Complaint and Counterclaim, Filing No. 15). On June 19, 2009, CSS Farms moved for summary judgment on its counterclaims, and the Court granted judgment in favor of CSS Farms on one counterclaim against Affinity, based on Affinity's failure to pay for goods sold and delivered, in the amount of $117,241.09. (Memorandum and Order, Filing No. 83).

## FACTS

CSS Farms and Affinity engaged in business with each other for several years before the events that led to this action. (Affidavit of Daniel Koch, Filing No. 104-1 ("D. Koch Aff.") ¶ 14). In or about October 2007, Affinity and CSS Farms entered into a written Purchase Agreement whereby CSS Farms was to deliver 44,000 cwt (*i.e.*, hundred weight, or one hundred pounds) of chipping potatoes to Affinity from October 14, 2007, through April 30, 2008. (Complaint, Filing No. 1-2, ¶ 4; Answer, Filing No. 15, ¶ 4; "Purchase Agreement," Filing No. 15-2). The Purchase Agreement provided that Affinity would pay CSS Farms within 28 days after receipt and acceptance of potatoes, and that Affinity would pay a 1% monthly charge "on all payments past 28 days." (*Id.*) The Purchase Agreement

also allowed CSS Farms "to cease shipping and terminate the contract if payments are overdue." (*Id.*)

Affinity contends that CSS Farms later modified the Purchase Agreement through oral representations and course of dealing, establishing a new payment plan for potatoes already received by Affinity during the course of the Purchase Agreement.[1] CSS Farms acknowledges that the Purchase Agreement was amended, but asserts that the amendment took place on or about December 27, 2007, through a document setting a lower price schedule for certain potatoes of a different variety. (Affidavit of Milton Carter, Filing No. 95-1 ("Carter Aff.") ¶ 4 and Exhibit B to Affidavit).

Between October 14, 2007, and February 12, 2008, CSS Farms or its affiliates shipped 33,221 cwt of potatoes to Affinity. (Carter Aff. ¶ 6, and Exhibit C[2] to Affidavit). Of the 28 loads of potatoes shipped by CSS Farms to Affinity from October 14, 2007, to January 9, 2008, Affinity made timely payment for only two. (*Id.*). Affinity took up to 80 days to pay for shipments, and furnished insufficient fund checks. (Carter Aff. ¶16, and Exhibit C to Affidavit). From January 13 to February 12, 2008, CSS Farms shipped 31 loads of potatoes to Affinity, and Affinity paid for none of those shipments. (*Id.*).

---

[1] CSS Farms sent e-mails to Affinity on January 31 and February 4, 2008, setting due dates for certain payments from Affinity. (Carter Aff., Exhibit E; Koch Aff., Exhibit B). The January 31 e-mail noted that a payment of $11,491.12 was "Due immediately" as "Loads are over 28 days old." (*Id.*). The February 4 e-mail stated that CSS Farms "will need to get the past due amount ($11,491.12) wired into our account" before shipping more potatoes. Koch responded on February 7, 2008, indicating that he transferred the $11,491.12 that date. (Koch Aff., Exhibit B). To the extent that the e-mail of January 31, 2008, constituted an offer to amend the Purchase Agreement, Affinity did not timely accept the offer.

[2] Exhibit C indicates that CSS Farms shipped 33,251.40 cwt of potatoes to Affinity during this time.

3

CSS Farms' president, Milton Carter, states that on February 11, 2008, he notified Affinity that CSS Farms would no longer ship potatoes to Affinity after February 12, 2008.[3] (Carter Aff. ¶ 10). Affinity contends that its accounts with CSS Farms were "current" as of February 11, 2008, but Affinity has presented no evidence, or even argument, disputing CSS Farms' evidence that Affinity's payments were past due on February 12, 2008, for potatoes delivered on January 14, 2008.[4] (D. Koch Aff. ¶ 17; Carter Aff. ¶ 12). CSS Farms made two shipments of potatoes to Affinity on February 11, 2008, totaling 951.6 cwt, and two shipments on February 12, 2008, totaling 941.8 cwt. (Carter Aff., Exhibit C). Although Dan Koch acknowledges having conversations with Carter about potato deliveries on Friday, February 8, and Monday, February 11, 2008, Koch states that it was not until Wednesday, February 13, 2008, that Carter told him that CSS Farms would not send any more potatoes to Affinity. (D. Koch Depo., 169:7 to 170:9).

---

[3] In Affinity's Brief (Filing No. 103 ("Plaintiff's Brief") p. 2, ¶ 5) it asserts that "it was informed on February 8, 2008 by Milt Carter that shipments would no longer be made." That assertion, however, is not supported by the evidence Affinity references. Affinity also asserts that if it "had received notice from CSS Farms' [sic] at an earlier time regarding CSS Farms' decision to cease delivering potatoes, Affinity might have been able to obtain potatoes on the open market in time to prevent the production facility from closing." (Plaintiff's Brief, p. 5, ¶ 22). Accordingly, Affinity contends that CSS Farms committed an anticipatory breach of the Purchase Agreement by providing Affinity advance notice of its intention not to deliver potatoes after February 12, 2008, but Affinity is also critical of CSS Farms for not providing *more* advance notice of its intention.

[4] Although Affinity has not acknowledged affirmatively that its payments to CSS Farms were overdue and that it was in default of the Purchase Agreement as of February 12, 2008, Affinity presented no evidence to contradict Milton Carter's sworn statement that Affinity was in default as of February 12, 2008. (Carter Aff. ¶ 12). Affinity simply responded by asserting that its accounts were current as of February 11, 2008. (D. Koch Aff. ¶ 17).

During the February 2008 discussions, Koch told Carter that a supply of potatoes was "crucial to Affinity remaining operational and being sold as an on-going business." (D. Koch Aff. ¶ 18).  At the time CSS Farms stopped shipping potatoes to Affinity, however, Affinity had received no offers for its business.  (D. Koch Depo. 179: 20 to 180:5).  Affinity had yearly operating losses between $1,000,000 and $2,000,000 for six consecutive years, from 2002 through 2007, and had never made a profit.  (Affidavit of Janet M. Labenz, C.P.A., Filing No. 95-2 ("Labenz Aff."), Appendix A, Exhibit II; Harry A. Koch Deposition, Filing No. 95-3 ("H. Koch Depo.") 40:18 to 41:14; Plaintiff's Brief, Filing No. 103, p. 4, ¶ 14).

Affinity ceased all operations on February 13, 2008.  (Koch Aff. ¶ 24).  At that time, Affinity had a contract with another potato supplier for over 40,000 cwt of chipping potatoes that had not yet been delivered, and could have maintained operations for two more weeks. (Plaintiff's Responses to Requests for Admissions, Filing No. 95-8; D. Koch Depo. 177:4-15).  Affinity acknowledges that "an open market for potatoes in the United States existed as of February 12, 2008."  (Plaintiff's Brief, Filing No. 103, p. 3, ¶ 7).

On February 15, 2008, CSS Farms sent Affinity a letter stating that the parties' Purchase Agreement was terminated due to Affinity's overdue payments.  (Koch Aff. ¶ 25). On February 23, 2008, a potential buyer offered $3,500,000 for Affinity's business[5], but was unable to obtain funding[6] to close the sale.  (D. Koch Aff. ¶ 12; Deposition of Daniel

---

[5]  The $3.5 million offer was for Affinity Production and Affinity Snack Food and their equipment, but not real estate or plant.  (D. Koch Depo. #2, 77:7 to 78:17).

[6]  "[H]e had enough desire, I just don't think he had the financial wherewithal–or scratch that. He was looking for his significantly wealthy brother-in-law to back him, and I don't think he ever convinced the brother-in-law to do so." (D. Koch Depo. #2, 79:8-13).

5

Koch, Filing No. 106-1 ("D. Koch Depo. #2") 76:20 to 78:17). Affinity sold its equipment at auction for $350,000, and transferred its building, valued at $1,700,000, in partial satisfaction of debt. (D. Koch Aff. ¶¶ 30-31).

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "a genuine issue of material fact such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law . . . .'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1985)).  Thus, a "genuine issue" is more than "some metaphysical doubt as to the material facts," *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bloom*, 440 F.3d at 1029-30 (emphasis and quotation marks removed) (quoting *Anderson*, 477 U.S. 247-48).

## DISCUSSION

### *I.  Anticipatory Repudiation of Contract*

Nebraska is the forum state, as well as the state in which the facts giving rise to the action occurred, and the parties' briefs present arguments based on Nebraska law.  The Court agrees that Nebraska substantive law governs.

"Under Nebraska law, if a contract is to be construed by reference to its terms alone and without reference to extrinsic circumstances, it is for the court alone to interpret." *Ford v. First Municipal Leasing Corp.,* 838 F.2d 994, 997 (Neb. 1988) (citing *Able Electric Co. v. Vacanti & Randazzo Construction Co.* 324 N.W.2d 667, 669 (1982)). "If, however, interpretation depends upon extrinsic facts which are in dispute, determination of the meaning of the contract is for the factfinder." *Id.*

Construing the facts in the light most favorable to the non-moving party, Affinity had a contract with CSS Farms for the delivery of 44,000 cwt of potatoes between October 14, 2007, and April 30, 2008, and CSS Farms delivered only approximately 33,250 cwt of potatoes, or 10,750 cwt less than agreed.  On February 11, 2008, Affinity was not in breach of the Purchase Agreement, as amended orally and through course of trade.  CSS Farms

7

delivered no more potatoes to Affinity after February 12, 2008, although CSS Farms did not give written notice of the termination of the Purchase Agreement until February 15, 2008.

While there may be genuine issues of fact as to whether Affinity was current in its payments to CSS Farms as of February 11, 2008, there is no genuine dispute that Affinity's payments were delinquent on February 12, 2008, and CSS Farms then had every right to stop shipping potatoes and terminate the Purchase Agreement. Under the language of the Purchase Agreement, CSS Farms was not required to terminate the contract *before* it ceased shipping potatoes.

Affinity's first cause of action, for anticipatory repudiation of contract, is based on the theory that CSS Farms notified Affinity that it would not ship more potatoes at a time when Affinity was not in breach of the Purchase Agreement, as modified orally and through course of dealing. This theory is contradicted by Dan Koch's own testimony that it was not until February 13, 2008, that Carter notified him that CSS Farms would ship no more potatoes. (D. Koch Depo. 169:15-17). The theory is also contradicted by Affinity's criticism of CSS Farms for not providing *earlier* notice of its intention to stop shipping potatoes. (Complaint, Filing No. 2-1, ¶ 37; Plaintiff's Brief, Filing No. 103, p.5, ¶ 22).

"Under Nebraska Law, an anticipatory repudiation requires an overt communication which demonstrates a clear determination not to continue with performance: an unqualified renunciation of the contract." *Ford,* 838 F.2d at 998 (citing *Crowder v. Aurora Co-operative Elevator Co.*, 393 N.W.2d 250, 257 (Neb. 1986)). In general, the question of whether one party has repudiated an agreement is a question of fact for a jury. *Blue Creek Farm, Inc.*

*v. Aurora Cooperative Elevator Co.*, 614 N.W.2d 310, 313 (Neb. 2000). Drawing every inference in favor of the non-moving party, however, this Court cannot conclude that any genuine issue of fact exists as to whether CSS Farms engaged in an anticipatory repudiation of the Purchase Agreement. CSS Farms did not make an unqualified renunciation of the Purchase Agreement until after Affinity was clearly in default:

> A. . . . We sent the request in on the 8th and they sent in a couple loads, and then on the 13th they informed us they would not be – when I talked to Milt on the 13th, that's when he told us he would not be sending any further.
>
> Q. So where it says here, "Upon receipt of Affinity's purchase order, CSS advised Affinity that CSS would not be providing any more potatoes," it was actually the following Wednesday that it advised?
>
> A. Well . . . .
>
> Q. Is that right?
>
> A. There were – it was between Friday [February 8] and that Wednesday [February 13] there were discussions that were ongoing. Originally he said – on Friday [February 8] told me that he would not be. I told him that we needed to keep the supply going and I would talk to him further about it on Monday [February 11] when I could disclose more. And then on Monday [February 11] we had further conversations, then on Wednesday [February 13] that's when the definitive cutoff happened, if I recall the chain of events.

D. Koch Depo. 169:13 to 170:9.

Even if a question of fact *did* exist with respect to whether CSS Farms engaged in an anticipatory repudiation of the Purchase Agreement, the Court's inquiry would not end there. Uniform Commercial Code § 2-610 provides in part: "When either party repudiates the contract with respect to a performance not yet due *the loss of which will substantially impair the value of the contract to the other*, the aggrieved party may [exercise certain options]." (emphasis added). If CSS Farms gave Affinity some advance notice that no more potatoes would be shipped after February 12, 2008, that notice did not substantially

9

impair the value of the Purchase Agreement to Affinity, because Affinity was in default on February 12, 2008, and had no right to receive more potatoes from CSS Farms.  As Affinity has pointed out in its Complaint and its Brief, the more advance notice it had of CSS Farms' intention to stop delivery of potatoes, the better Affinity was positioned to look elsewhere for potatoes.  (Complaint, Filing No. 2-1, ¶ 37; Plaintiff's Brief, Filing No. 103, p.5, ¶ 22).

Finally, even if a question of fact *did* exist with respect to whether CSS Farms engaged in an anticipatory repudiation, and even if Affinity were to assert that it *would* have made its payments due to CSS Farms on February 12, 2008, *but for* the anticipatory repudiation, and thereby would not have been in default on February 12, 2008, the Court's inquiry still would not end there.  "[W]hile an anticipatory repudiation releases the nonbreaching party of any duty to perform, repudiation does not relieve the nonbreaching party of showing its ability to perform in order to obtain a remedy."  *Acme Investment, Inc. v. Southwest Tracor, Inc.*, 105 F.3d 412, 416 (8th Cir. 1997) (citing Restatement (Second) of Contracts, Section 254).  In *Acme*, the evidence supported the district court's conclusion that the plaintiff was insolvent or nearly so during the relevant period, and so the plaintiff's evidence of its ability to perform was not persuasive.  Here, the evidence is overwhelming that Affinity was insolvent and could not perform its contractual obligations to CSS Farms.  Affinity has failed to demonstrate any genuine issue of fact as to its ability to pay for potatoes when payments were due under the Purchase Agreement – Affinity lacked the ability to perform.[7]  Accordingly, Affinity has no right to a remedy.

---

[7] It is recognized that Affinity may have been able to persuade investors to loan it money.  Like the district court in *Acme,* this Court will decline to consider the financial

If CSS Farms did give Affinity some advance notice that CSS Farms did not intend to continue shipping potatoes after February 12, 2008 – the date Affinity without dispute was in default under the Purchase Agreement – that was a courtesy that placed Affinity in a better position to seek potatoes from other suppliers. CSS Farms did not stop making shipments, and terminate the Purchase Agreement, until Affinity was in default. If CSS Farms had ceased deliveries *before* February 12, 2008, or if Affinity had brought its account current on February 12, 2008, and CSS Farms *then* refused to deliver more potatoes, there might be genuine issues of material fact as to whether CSS Farms breached the Purchase Agreement. That is not the case.

Because the Court concludes that Affinity is not entitled to recover on its claim against CSS Farms for anticipatory repudiation of contract, the Court need not address CSS Farms' arguments concerning Affinity's theories of damages, and its duties to cover and mitigate.[8]

---

resources of Affinity's principals, their other businesses, and their relatives. If a plaintiff's performance is dependent upon the funds of third parties, which funds such persons are in no way bound to furnish, the ability to perform is not demonstrated. *Acme*, 105 F.3d at 417 (citing *Tedco Dev. Corp. v. Overland Hills, Inc.*, 266 N.W.2d 56, 61 (Neb. 1978)).

[8] CSS Farms' arguments concerning Affinity's theories of damages, and its duties of cover and mitigate, are well taken. Affinity seeks damages "equal to the amount lost by Affinity when it could not sell its business as a working processing facility" and "profits it lost." (Complaint, Filing No. 1-2, p. 7). If Affinity had demonstrated an anticipatory repudiation of contract by CSS Farms, its damages would have been measured by the contract and market price differentials, plus incidental and consequential damages defined by statute. U.C.C. §§ 2-713, 2-715.

## II.  *Intentional Interference with Valid Business Expectancy*

Dan Koch contends that "[h]ad Affinity continued operation, Affinity could have been sold for a greater amount then we were able to receive through the auction of our equipment." (D. Koch Aff. ¶ 33). He states that it is his "belief that the business could have sold for between approximately $12,000,000 and $21,000,000." (*Id*., ¶ 11). Affinity's Complaint alleges that the value of its business at the time of the alleged anticipatory breach of contract was approximately $15,000,000 to $24,000,000. (Complaint, Filing No. 1, ¶ 34).

"To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc*., 748 N.W.2d 626, 644 (Neb. 2008). "In order to be actionable, interference with a business relationship must be both intentional and unjustified." *Id.* at 645.

Affinity has not come forward with specific facts demonstrating any genuine issue of material fact as to its claim based on alleged tortious interference with a valid business expectancy. No valid business relationship or expectancy with respect to the sale of Affinity's potato chip manufacturing business existed at any time relevant to this action; and CSS Farms stopped shipping potatoes to Affinity because Affinity wasn't paying for the potatoes in a timely manner. Affinity cannot meet its burden with respect to any element of this claim.

Accordingly,

IT IS ORDERED:

1. The Defendant CSS Farms, Inc.'s Motion for Summary Judgment (Filing No. 93) is granted;

2. All claims by Plaintiff Affinity Production Co., LLC, against CSS Farms, Inc., are dismissed, with prejudice; and

3. This action will proceed on the counterclaims of Counterclaimant, CSS Farms, Inc., against Counterdefendants Affinity Production Co., LLC, and Daniel Koch, remaining for trial.

DATED this 24th day of February, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge